**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Hector Padilla, | Case No.: 2:24-cv-00286-JAD-MDC |
| Plaintiff | |
| v. | **Order Denying Emergency Motions for Temporary Restraining Order and Preliminary Injunction** |
| U.S. Bank Trust National Association as trustee for RCF 2 Acquisition Trust; et al., | |
| Defendants | [ECF Nos. 4, 5] |

In this quiet-title action, plaintiff Hector Padilla moves to enjoin U.S. Bank from foreclosing on his real property located at 5205 Lytton Avenue in Las Vegas, Nevada, two days from now.[1]  The impending foreclosure is the bank's effort to enforce rights under the deed of trust that secures a home equity line of credit taken out by a former owner of the property. Though the encumbrance has stuck to the property through the long chain of title that led to Padilla's acquisition, he questions whether the credit line was even accessed.  If it was, he theorizes that the deed of trust that secures it was extinguished by operation of Nevada's ancient-lien statute, Nevada Revised Statute (NRS) 106.240, so is now unenforceable.  But Padilla's unsupported belief that his predecessor never accessed the credit line can't satisfy his burden to show a likelihood of success on the merits of his claims, and his NRS 106.240 theory is based on a misunderstanding of how that statute works.  So I find that Padilla has not met his high burden for this equitable relief, and I deny his request to enjoin the foreclosure sale.

---

[1] ECF Nos. 4, 5.

**Analysis**

The legal standard for issuing a temporary restraining order and the legal standard for preliminary injunctive relief are "substantially identical."[2] Both are "extraordinary" remedies and "never awarded as of right."[3] The United States Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[4] The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor' and the other two *Winter* factors are satisfied."[5]

Padilla can satisfy neither standard in light of the history of this case and the Nevada Supreme Court's recent explanation of how NRS 106.240 works. In 2004, the then owner of this property, Peter Wong, took out a revolving line of credit from Bank of America and secured it with a deed of trust that was recorded against the property.[6] Wong sold the property just five days later to Charles Root,[7] and title transferred hands a few more times before landing

---

[2] *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).
[3] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).
[4] *Id.* at 20.
[5] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)) (cleaned up).
[6] ECF No. 4-2 (Revolving Credit Deed of Trust, Security Agreement, and Assignment of Rents).
[7] ECF No. 4-3 (Root deed).

exclusively in Padilla's about a year ago.[8] Before Padilla came into the picture, Bank of America had assigned its deed of trust to U.S. Bank. That assignment was recorded against the property in July 2022 and identifies an "Original Loan Amount" of $145,000.[9] Shortly after Padilla took title, U.S. Bank, through its agent, recorded a notice of default and election to sell, which recounts that the loan "became due July 15, 2021."[10] The foreclosure sale is now scheduled for February 22, 2024.

Padilla acknowledges that this deed of trust creates a cloud on the title to this property, so he sues to quiet title with a declaration that he owns the property free and clear of this encumbrance.[11] He alleges that the Wong debt "was not paid when Mr. Root purchased the property" or alternatively "no funds were loaned to Mr. Wong in relation to" that line of credit so "there was no obligation to pay off at closing."[12] Regardless, he theorizes that the passage of nearly 20 years since Wong sold the property has rendered that deed of trust no longer enforceable.[13] He moves for a temporary restraining order and preliminary injunction to stop the foreclosure sale. He posits that the fact that Wong obtained the line of credit just days before selling the property to Root and the bank's delay in taking action against the property raise "[l]egitimate questions" about the right to enforce the deed of trust.[14] He adds that the debt has been extinguished by NRS 106.240, which "creates a conclusive presumption that a lien on real

---

[8] ECF Nos. 4-4, 4-5, 4-6, 4-7.
[9] ECF No. 4-8 at 2.
[10] ECF No. 7-1 at 2.
[11] ECF No. 1-2 at 5.
[12] *Id.* at 4.
[13] *Id.* at 6.
[14] ECF No. 4 at 9.

property is extinguished ten years after the debt becomes due," because "the obligation . . . came due when the Property sold in 2004 and Wong failed to make the necessary payment."[15]

But Padilla's bald skepticism about whether Wong actually tapped the $145,000 home-equity line of credit before selling the property to Root falls short of establishing either a likelihood of succeeding on the merits of his claims or even serious questions going to their merit. Nor does NRS 106.240 save him from this encumbrance. The statute "provides that certain liens on real property are discharged by operation of law ten years after the related debt becomes 'wholly due.'"[16] Padilla points to nothing in his complaint or motion that would support the conclusion that the Wong debt became wholly due more than ten years ago under Nevada law. He asserts that the debt "came due when the Property sold in 2004" because "Wong was obligated to pay back any funds he borrowed from Bank of America in 2004 when he sold the Property," and because he didn't, "the debt became due and Defendants should have acted before 2014 to enforce the obligation."[17] But Padilla offers no authority for the legal proposition that the sale to Root caused the debt secured by the deed of trust to become wholly due, and he provides no evidence for the factual assertion that Wong stopped making payments on the loan at the time of that sale.

Indeed, both assumptions appear to be wrong. The Nevada Supreme Court just a few months ago in *LV Debt Collect, LLC v. Bank of New York Mellon* held that very few events can cause a loan to become "wholly due" under the statute:

---

[15] *Id.* (quoting *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001)). The bank opposes the motion. ECF No. 7.

[16] *LV Debt Collect, LLC v. Bank of New York Mellon*, 534 P.3d 693, 697 (Nev. 2023).

[17] ECF No. 4 at 9–10.

4

> [A] deed of trust can only be presumed satisfied under NRS 106.240 when ten years have passed after the last possible date the deed of trust is in effect, as shown by the maturity date on the face of the deed of trust or any recorded extension thereof, rather than a document like a notice of default that can sometimes have multiple iterations, recordings, rescissions, and other circumstances that would not give the clarity to property records this statute was designed to bring.[18]

Nothing in that holding supports Padilla's legal theory that the sale of this property rendered this home-equity loan wholly due, triggering the statute's ten-year clock. Though the deed of trust securing that loan has a due-on-sale clause, it merely gives the lender the "option" to "declare immediately due and payable all sums secured by" the deed of trust, and Padilla has provided nothing to show that the lender exercised that option upon the Root sale.[19] Plus the recorded notice of default and election to sell from the bank states that the loan "became due July 15, 2021,"[20] which would put the NRS 106.240 automatic discharge date in 2031.

### Conclusion

Because Padilla's failure to demonstrate either a likelihood of success on, or serious questions going to, the merits of his claims dooms his injunctive-relief request, IT IS ORDERED that Padilla's emergency motions for a temporary restraining order and a preliminary injunction to enjoin the February 24, 2024, foreclosure sale **[ECF Nos. 4, 5] are DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
February 20, 2024

---

[18] *LV Debt Collect*, 534 P.3d at 699.
[19] ECF No. 4-2 at 4.
[20] ECF No. 7-1 at 2.